T.C. Summary Opinion 2001-76

UNITED STATES TAX COURT

RICHARD J. TRITZ AND MARY JO NIETUPSKI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18712-99S.                    Filed June 4, 2001.

Richard J. Tritz and Mary Jo Nietupski, pro sese.

James M. Klein and Mark J. Miller, for respondent.

DINAN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioners' Federal income tax of $2,184 for the taxable year 1997.

The issue for decision is whether petitioners are entitled under section 104(a) to exclude from income an amount received pursuant to a severance package.

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Muskego, Wisconsin, on the date the petition was filed in this case.

Petitioner husband (petitioner) was employed as an application systems engineer with Amdahl Corporation from 1994 to 1997. Petitioner was treated in 1994 through 1996 for carpal tunnel syndrome (CTS), the symptoms of which had begun prior to his employment at Amdahl. Petitioner's treatment included surgery which caused him to miss work for 1 week and 5 days in 1994 and for 3 weeks and 4 days in 1995. He received payments from an insurance company on behalf of Amdahl for the treatment of CTS and for lost wages. The insurance company questioned responsibility for the payment of the expenses due to the fact that petitioner was injured to some extent prior to his employment at Amdahl. As of July 17, 1995, petitioner's medical records indicate that he no longer had symptoms of CTS and that there was no permanent disability relating thereto. Petitioner

also experienced pain in his shoulder, arm, and elbows while working at Amdahl.

At some point in time, Amdahl discontinued sales of a certain software development package in North America due to declining sales. In response, Amdahl implemented a business reduction plan. Petitioner's employment was terminated after he refused Amdahl's offer to be transferred to a new position in Chicago, Illinois (he had been working in the northern suburbs of Chicago prior to termination). Pursuant to the business reduction plan, which affected employees other than petitioner, Amdahl provided petitioner with a severance package consisting of 2 weeks of regular salary and benefits. He was also provided with a one-time payment of $15,588. In order to receive this one-time payment, petitioner was required to execute a general release of claims in favor of Amdahl. He had no opportunity to engage in substantive discussions regarding the content of this release, which provides in relevant part:

> In consideration of the Enhanced Salary Continuation Pay and Benefits paid to me by Amdahl Corporation in connection with the termination of my employment in accordance with the terms of the 1997 Salary Continuation Pay and Benefit Plan, a copy of which has been given to me, I hereby fully and forever RELEASE and DISCHARGE Amdahl * * * from all claims and causes of action arising out of or relating in any way to my employment with Amdahl, including the termination of my employment. Should I maintain any action or claim against Amdahl for workers' compensation benefits, which action or claim results in an award or payment to me, Amdahl will be entitled to a dollar for

dollar offset of any award or payment against the amounts paid as part of this separation package.

The release then recites a lengthy noninclusive list of claims waived by the release--this list includes claims of personal injury. A document provided with the release titled "1997 Reduction In Force Questions and Answers" states two purposes for the reduction in force: (1) "Give our separated employees a generous salary continuation package," and (2) "Fix the costs associated with the Reduction in Force." The explanation further states:

> Experience in the industry and in the area shows that separated employees are increasingly inclined to challenge their terminations. Defending against agency charges and individual lawsuits costs money and makes the costs associated with the Reduction in Force unpredictable. Frankly, we would rather distribute that money to our separated employees in the form of a better separation package than to pay it to lawyers.

Nothing in this document specifically addresses the aspects of the general release waiving or releasing Amdahl from claims arising from personal injuries.

Petitioner signed the release on March 14, 1997. Petitioner's employment with Amdahl was terminated on March 28, 1997, and petitioner was paid the amounts under the plan. When petitioner's employment was terminated, neither he nor an agent on his behalf had informed Amdahl that he intended to sue them for personal injury suffered as a result of his employment.

Amdahl treated the entire amount paid to petitioner as compensation and issued him a Form W-2, Wage and Tax Statement. With their 1997 joint Federal income tax return, petitioners filed a statement explaining their position concerning the taxability of the amount reported on the Form W-2. Petitioners argued that the one-time payment was received in exchange for the release of a variety of different types of claims, including claims for personal injury, emotional distress, workers' compensation, ERISA violations, discrimination violations, and civil rights violations. Petitioners estimated that one-half of the one-time payment was nontaxable and accordingly did not include $7,794 of this amount in income. Petitioners did include in income $35,679 of the severance package, representing the remainder of the one-time payment and the portion representing two weeks of compensation.

In the statutory notice of deficiency, respondent determined that the amount excluded by petitioners as nontaxable, $7,794, was severance or termination pay and entirely taxable. Petitioners now argue that the entire amount of the one-time payment, not merely one-half, should be excluded from income.

Separation or severance pay, like other forms of compensation for services, is generally includable in the income of the recipient. See sec. 61(a)(1); sec. 1.61-2(a)(1), Income Tax Regs.; Brennan v. Commissioner, T.C. Memo. 1997-317.

However, section 104(a)(2) excludes from gross income certain

amounts received on account of personal physical injury or

sickness.  The provision reads in pertinent part:

> SEC. 104(a).  In General.--Except in the case of
> amounts attributable to (and not in excess of) deductions
> allowed under section 213 (relating to medical, etc.,
> expenses) for any prior taxable year, gross income does not
> include--
>
> \*    \*    \*    \*    \*    \*    \*
>
> (2) the amount of any damages (other than punitive
> damages) received (whether by suit or agreement and
> whether as lump sums or as periodic payments) on
> account of personal physical injuries or physical
> sickness;
>
> \*    \*    \*    \*    \*    \*    \*
>
> \* \* \* For purposes of paragraph (2), emotional distress
> shall not be treated as a physical injury or physical
> sickness.  The preceding sentence shall not apply to an
> amount of damages not in excess of the amount paid for
> medical care (described in subparagraph (A) or (B) of
> section 213(d)(1)) attributable to emotional distress.[1]

---

[1]Section 104(a) was amended by the Small Business Job
Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat.
1755, 1838.  Prior to amendment, it read in pertinent part:

> SEC. 104(a).  In General.--Except in the case of
> amounts attributable to (and not in excess of) deductions
> allowed under section 213 (relating to medical, etc.,
> expenses) for any prior taxable year, gross income does not
> include--
>
> \*    \*    \*    \*    \*    \*    \*
>
> (2) the amount of any damages received (whether by
> suit or agreement and whether as lump sums or as
> periodic payments) on account of personal injuries or
> sickness;

(continued...)

Petitioners argue that the one-time payment was on account of personal physical injury because the only actual and/or potential claim petitioner had against Amdahl at the time the release was signed was for personal physical injury.

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for the agreement controls whether such damages are excludable under section 104(a)(2). See Brennan v. Commissioner, supra. Where the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor in making that determination is the intent of the payor, rather than whether or not the taxpayer actually suffered an injury. See Primozic v. Commissioner, T.C. Memo. 1999-95. The absence of any knowledge of a claim on the part of the payor has a negative impact in determining the requisite intent of the payment. See Brennan v. Commissioner, supra. Claims for

[1](...continued)

* * * * * * *

* * * Paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness.

The amendment applies to amounts (1) received after August 20, 1996, in taxable years ending after such date, (2) which were not received under a written binding agreement, court decree, or mediation award in effect on (or issued on or before) September 13, 1995. See id. sec. 1605(d), 110 Stat. 1839. Petitioner signed the release in this case on March 14, 1997, and the payment therefor was received after that date.

potential future injuries do not qualify for exclusion under section 104(a).  See id.[2]

The release in this case recites a vast number of types of claims with respect to which petitioner released Amdahl from liability.  Because the release does not specify what portion of the payment is allocable to which claim, we look to the payor's intent.  See id.  We find that the payment in this case was not made with the intent to compensate petitioner for personal physical injury.  First, Amdahl had not been notified of any claim petitioner had against it concerning such injury.  In addition, the payment was made to petitioner in connection with the termination of his employment.  He was one of a group of employees who had the option of signing an identical release in order to obtain a superior severance package.  The use of a standardized release form in connection with the termination of a number of employees is indicative that the payment was not on account of personal injuries.  See Laquaite v. Commissioner, T.C. Memo. 2000-103.  This is especially true in this case, where

----

[2]The cases cited here and infra remain instructive even though they were decided prior to the amendment of sec. 104(a)(2).  The section was amended by Congress with respect to the requirement that the personal injury be physical and the treatment of punitive damages.  See H. Conf. Rept. 104-737 (1996), at 300-302, 1996-3 C.B. 1040-1042; H. Rept. 104-586 (1996), at 142-144, 1996-3 C.B. 480-482; S. Rept. 104-281 (1996), at 115-116.  Neither of these modifications bear on the case at bar, and nothing in the statute or its legislative history indicates that we should interpret the unaffected portion of the statute differently than prior to amendment.

petitioner was unable even to discuss the terms of the agreement with Amdahl.

Petitioners further argue (1) that the amount paid to petitioner for treatment of his injury was less than the normal cost of such treatment, (2) that petitioner's prior injury may result in future costs if it is discovered that his injury was more serious than previously thought, and (3) that petitioner has not yet received any amounts for pain and suffering with respect to the injury. All of these assertions are irrelevant to the underlying intent in Amdahl's making the one-time payment as part of petitioner's severance package.

Because petitioner received the one-time payment as part of a severance package in connection with the termination of his employment, and not on account of personal physical injury or sickness, the payment is not excludable from gross income under section 104(a)(2).

Petitioners make the alternative argument that the one-time payment for the release is excludable as a workers' compensation payment. They are presumably arguing that section 104(a)(1) is applicable in this case. Section 104(a)(1) generally excludes from income "amounts received under workmen's compensation acts as compensation for personal injuries or sickness." It is clear that petitioner did not receive the one-time payment under a workmen's compensation act or "under a statute in the nature of a

workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." Sec. 1.104-1(b), Income Tax Regs. Rather, the payment was made in exchange for the execution of the release in connection with the termination of petitioner's employment, as discussed above. The payment is therefore not excludable from gross income under section 104(a)(1).

Finally, petitioners argue that (1) employment taxes were erroneously withheld from the one-time payment, and (2) the interest assessed by respondent is improper. This is a Court of limited jurisdiction. We may only exercise jurisdiction that is expressly permitted or provided by statute. See Henry Randolph Consulting v. Commissioner, 112 T.C. 1, 4 (1999). No statute in the Code provides this Court with jurisdiction to review respondent's assessment of employment taxes in this case.[3] See id. Likewise, this Court does not have jurisdiction to redetermine interest in this case prior to the entry of a decision redetermining the deficiency. See sec. 7481(c); Rule 261; Pen Coal Corp. v. Commissioner, 107 T.C. 249, 255 (1996).

---

[3]Judicial review of employment taxes may be obtained, after paying the taxes and requesting a refund from the Secretary, in a refund suit in Federal District Court or the United States Court of Federal Claims. See sec. 7422(a); 28 U.S.C. secs. 1346(a)(1) and 1491(a)(1) (1994).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.